IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3589 |
| | § | |
| NORTH AMERICAN INTERPIPE, INCORPORATED f/k/a SEPCO TUBULARS, INC., | § | |
| | § | |
| Defendant/Counter Plaintiff/Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NEXT CHAPTER ASSOCIATES, L.L.C., and FITZHENRY & HOGAN, INC., d/b/a ASSOCIATED INSURANCE MANAGERS, | § | |
| | § | |
| Third-Party Defendants. | § | |

MEMORANDUM AND ORDER

Pending are Defendant North American Interpipe, Incorporated f/k/a Sepco Tubulars, Incorporated's Motion for Partial Summary Judgment Concerning its Claims Against Lexington Insurance Company (Document No. 30) and Plaintiff Lexington Insurance Company's Motion for Summary Judgment (Document No. 33). After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows.

I.  Background

This insurance dispute arises out of a claim under Commercial General Liability (CGL) Policy Number 6672149 (the "Policy") issued by Lexington Insurance Company ("Lexington") to Sepco Tubulars, Inc., now known as North American Interpipe, Inc. ("NAI"). A piece of NAI casing ruptured in a natural gas well owned by Ultra Resources, Inc. ("Ultra") in Wyoming in 2006 during fracturing procedures, allegedly causing Ultra approximately $1.7 million in damages. Ultra brought suit in Colorado state court, whereupon Lexington agreed to defend NAI subject to a reservation of rights[1] and brought the instant suit in this Court, seeking a declaration that it has no duty to defend or indemnify NAI.[2] Ultra soon thereafter settled with NAI for $610,149.83[3]; Lexington consented to the settlement subject to a mutual reservation of rights "regarding coverage issues."[4] NAI cross-claimed against Lexington,[5] and now asserts that it is entitled to indemnity in the amount of $512,690.66 after application of the Policy's $250,000 self-insured

---

[1] Document No. 32, ex. A at 2; Document No. 33, ex. H at 2.

[2] Document No. 1.

[3] Document No. 33, ex. G at NAI 01529.

[4] Id., ex. H at 2-3.

[5] See Document No. 25.

retention provision.[6] NAI also has asserted causes of action against Lexington for violation of the Texas Prompt Payment of Claims Act, the Texas Insurance Code, the Texas Deceptive Trade Practices Act ("DTPA"), and breach of the common law duty of good faith and fair dealing.[7] Lexington and NAI filed cross motions for summary judgment on only the issue of coverage under the Policy.

## II. Discussion

A. Legal Standards

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th

---

[6] Document No. 32 at 12, 24.

[7] Document No. 25 at 10-13. NAI additionally asserts third-party claims against its insurance agents that procured the Policy, which were the subject of a previous Memorandum and Order. See Memorandum and Order dated June 19, 2009 (Document No. 24). The present motions do not concern NAI's third-party claims.

Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

In Texas, insurance policies are subject to normal rules of contract construction.  Carrizales v. State Farm Lloyds, 518 F.3d 343, 345-46 (5th Cir. 2008) (citing Nat'l Union Fire Ins. Co. v.

4

CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995)). Texas courts construe the language according to "the ordinary, everyday meaning of the words to the general public." United States Fidelity & Guar. Co. v. Goudeau, 272 S.W.3d 603, 607 (Tex. 2008) (quoting Fiess v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006)). The focus of construction is to ascertain the parties' intent as expressed in the policy. CBI Indus., 907 S.W.2d at 520. "If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991). If, on the other hand, the policy is ambiguous--that is, subject to more than one reasonable interpretation, one providing coverage and the other not--the Court will construe the policy against the insurer to find coverage. Carrizales, 518 F.3d at 346. The mere fact that parties disagree as to the meaning of a term, however, does not alone establish ambiguity. Id.

The insured first bears the burden of proving that a loss is encompassed by the basic coverage terms of the relevant policy; if it is, the insurer may then demonstrate the applicability of an exclusion to coverage. *See* Fiess v. State Farm Lloyds, 392 F.3d 802, 807 (5th Cir. 2004).

B.   NAI has demonstrated coverage under the basic terms

Lexington asserts that failure of the NAI casing was not an "occurrence" under the policy, and thus there is no coverage. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[8] Because the Policy does not define "accident," the Court interprets it according to its "generally accepted or commonly understood meaning." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp. ("Puget I"), 532 F.3d 398, 402 (5th Cir. 2008) (quoting Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 8 (Tex. 2007)). "An accident is generally understood to be a fortuitous, unexpected, and unintended event." Lamar Homes, 242 S.W.3d at 8 (citations omitted). However, "a claim does not involve an accident or occurrence when . . . circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." Id. at 9; *see also* Puget I, 532 F.3d at 402 (noting same). However, mere foreseeability is not "the boundary between accidental and intentional conduct." Lamar Homes, 242 S.W.3d at 8. In short, if the circumstances confirm that failure of NAI's casing was the "natural and expected result" of its manufacturing process, then

---

[8] Document No. 33, ex. E at Lexington_01162 (hereinafter "Policy").

6

the casing's failure would not qualify as an "occurrence," and no coverage would apply to its claims.

Lexington asserts that it was highly probable that NAI's casing would fail because of a known defective manufacturing process that NAI disclosed to it while seeking insurance coverage. NAI's insurance agents disclosed to Lexington that it had five claims against it for "recovery, clean up, and loss of production" costs arising between April 2003 and April 2005; four of these claims involved P110 casing, the same type that failed in Ultra's well.[9] NAI reported to prospective insurers, including Lexington, that it traced the defective products to only one of five Ukrainian mills that manufacture its tube and casing.[10] It was subsequently "determined that the heat treating process equipment at the mill in question was faulty and that local inspections did not uncover the problem prior to shipping to the US."[11] NAI stated it had traced "all of the product from this lot" and that it had "satisfied itself that all of the casing has either been tested and found to be acceptable or already been put to its intended use and is past the point of any likely new occurrence."[12] Around May 2005, it further enacted a plan to fix the defective process and implement

---

[9] Document No. 33, ex. A at Lexington_01305-06.

[10] Id., ex. D at 1.

[11] Id.

[12] Id.

more effective quality control at the culpable plant.[13] Lexington, apparently satisfied by NAI's representations, agreed to include a policy endorsement excluding only "the recalled product that was produced by the Nizhnedneprovsky plant completely."[14]

The evidence of record establishes that the casing at issue did not come from this plant. The affidavit of NAI's engineering expert in the underlying case, to which Lexington does not object, is that the casing did not come from this plant.[15] NAI reported to its insurance agent that the failed casing in the Ultra well came from Production lot "05/1013," which does not match any of the excluded lot numbers in the policy endorsement.[16] There is no evidence that the casing was part of the identified defective lots, nor even that it was manufactured at the problematic Nizhnedneprovsky plant.

With no evidence that the failed joint of casing in the Ultra well came from the problematic plant, Lexington merely asserts that the joint "was produced prior to the purported repair of the heat process equipment and implementation of the quality control

---

[13] Document No. 35, ex. 1A at 4-10; id., ex. 2 at 2; see also id., ex. I at 1-2.

[14] Document No. 35, ex. 1 at 27. Endorsement 18 of the Policy excludes coverage for claims arising from products in "order numbers 04-1134, 04-1175, and 04-1359 at the Nizhnedneprovsky pipe rolling plant in the Ukraine." Policy at Lexington_01200.

[15] Document No. 32, ex. 2 at 2.

[16] Document No. 33, ex. I at 2.

procedures," and "contained the same inherent defects as the failed casings reported to NAI over the course of 2003 and 2005."[17] Nothing in the record supports an inference that all casing manufactured prior to the Nizhnedneprovsky plant corrections should have been expected to fail. NAI identified problems at only that single plant out of the five supplying its casing.[18] The evidence is uncontroverted that NAI sold large volumes of joints of casing to other well operators that were used without incident.[19] In the absence of any evidence to raise a fact issue that NAI knew or should have known the casing in the Ultra well would fail, NAI is entitled to summary judgment that the loss is included under the basic coverage terms of the Policy.[20]

---

[17] Id., at 10; see also id. at 14-15.

[18] Id., ex. D at 1.

[19] Document No. 35, ex. 2 at 1-2; id., ex. 2-B at 1.

[20] Because the uncontroverted summary judgment is that NAI did not know or have reason to know that the casing joint in the Ultra well would fail, Lexington's similar argument that the casing failure was a "known loss" or "loss in progress" similarly fails. See Document No. 33 at 8-9. Regardless, the casing failure was not a "known" or "ongoing" loss as of the time NAI acquired coverage under the Policy. "A 'known loss' is a loss the insured knew had occurred at the time it purchased the policy." Lennar Corp.v. Great Am. Ins. Co., 200 S.W.3d 651, 688 (Tex. App.--Houston [14th Dist.] 2006, pet. denied). A "loss in progress" exists "when the insured is, or should be, aware of an ongoing progressive loss at the time it purchased the policy." Id.

The relevant loss occurred when the joint failed--which occurred after NAI purchased the Policy--not when the joint was manufactured, as Lexington appears to contend. See, e.g., Lennar Corp., 200 S.W.3d at 687-88 (coverage precluded as to underlying

C.  Policy Exclusions

Lexington argues that, even if there is *prima facie* coverage, the Policy's exclusions absolve Lexington of liability. For example, Exclusion *k* precludes coverage for liability arising from "'[p]roperty damage' to 'your product' arising out of it or any part of it."[21] This is a standard "business risk" exclusion in CGL policies, the meaning of which is well-established and agreed by the parties: it excludes coverage for liability for the repair or replacement of the insured's own product, but coverage is not excluded for liability resulting from damage to *other* property because of the defective product. *See, e.g.*, Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 500 (Tex. 2008); T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co., 784 S.W.2d 692, 694-95 (Tex. App.--Houston [14th Dist.] 1989, writ denied); 9A LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 129:16 (3d ex. 2005); *see also* Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics

---

liability when insured contractor knew of actual *damage* caused to homes by its defectively designed product prior to obtaining coverage; fact issues existed where evidence conflicted as to whether insured should have known about ongoing *property damage* to other homes); *see also* Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co., 267 S.W.3d 20, 30 (Tex. 2008) (quoting 7A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4491.01 (Walter F. Berdal ed., 1979)) ("[T]he time of the occurrence of the accident within an indemnity policy is generally not considered to be the time the wrongful act was committed but the time when the complaining party was actually damaged.").

[21] Policy at Lexington_01150.

Corp. ("Puget II"), 649 F. Supp. 2d 613, 649-50 n. 70 (S.D. Tex. 2009) (insured could not recover indemnity for liability arising from removal and replacement of its defective plastic water chambers in water heaters).

It is uncontested that at least some portion of Ultra's damages are excludable under NAI's policy because they arise from removing and replacing the defective NAI casing. NAI argues that Exclusion *k* should apply only to the $800 retail price of the single failed joint. The summary judgment evidence is that the failed casing required the removal of the casing string at least to the depth of the failure (2,900 feet), and the subsequent re-running and re-connecting of casing, which were labor-intensive services paid for by Ultra. Overall, Ultra claimed it sustained damages of $1.1 million by having to replace defective well casing to a depth of 6,000 feet and repairing its well, and further claimed $600,000 in damages as a result of permanent diminishment in the well's production. NAI, as observed above, successfully settled Ultra's claims for approximately $610,000, and the parties contest whether all or only a part of the settlement amount was paid for damages not excluded under Exclusion *k*. On this summary judgment record, a genuine issue of fact remains as to "what portion of the settlement was reasonably intended to concern claims covered by the policy at issue." Am. Int'l Specialty Lines Ins. Co. v. Res-Care, Inc., 529 F.3d 649, 657 (5th Cir. 2008).

Accordingly, the cross motions for summary judgment with respect to the application of the policy's exclusions and allocation of the settlement payment between covered and non-covered losses will be denied.

Finally, NAI's request for sanctions in its Response to Lexington Insurance Company's Motion for Summary Judgment (Document No. 35) is denied as procedurally defective without reaching its doubtful merits.  Federal Rule of Civil Procedure 11 requires that a motion for sanctions "be made separately from any other motion." FED. R. CIV. P. 11(c)(2).

## III.  Order

Based on the foregoing, it is

ORDERED that Defendant North American Interpipe, Incorporated f/k/a Sepco Tubulars, Incorporated's Motion for Partial Summary Judgment Concerning its Claims Against Lexington Insurance Company (Document No. 30) is GRANTED IN PART with respect to the basic coverage terms and is otherwise DENIED.  It is further

ORDERED that Plaintiff Lexington Insurance Company's Motion for Summary Judgment (Document No. 33) is DENIED.  Remaining for trial is the application of the policy's exclusions and allocation

of the $610,149.83 settlement payment between covered and non-covered losses.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 19th day of April, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE